632 S.E.2d 744 (2006)
279 Ga. App. 889
In the Interest of D.C., et al., children.
No. A06A0810.
Court of Appeals of Georgia.
June 16, 2006.
*745 Brian Linkowski, for Appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Evan L. Stapler, for Appellee.
SMITH, Presiding Judge.
The biological father of four-year-old D.C. and two-year-old A.C. appeals from the trial court's order terminating his parental rights. He contends that the trial court erred by finding he was not married to the children's mother by common law and by denying his motion for a continuance. We find no merit in these contentions and affirm.
The standard of review on appeal from a termination of parental rights is *746 whether, after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. In the Interest of L.F., 203 Ga.App. 522, 417 S.E.2d 344 (1992). On appeal, "[t]his Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met." (Citation and punctuation omitted.) In the Interest of R.N., 224 Ga.App. 202, 480 S.E.2d 243 (1997).
Viewed in this light, the record shows that the Haralson County Department of Family and Children Services (DFACS) petitioned the juvenile court to terminate the biological father's parental rights to D.C. and A.C. following his conviction for molesting another child living in the home. In its petition, DFACS asserted that the biological father was not the legal father[1] of the children and that he had failed to legitimate them. It also warned the father, pursuant to OCGA § 15-11-96(h), that he must file a petition to legitimate the children within 30 days or lose his right to object to the termination of his parental rights.
The biological father attempted to legitimate the children, and later asserted that he was married to the mother by common law, which would have made legitimation unnecessary. The trial court terminated the father's parental rights based on its conclusion that the father had failed to file his petition to legitimate in a court with subject matter jurisdiction, and therefore lost his right to object to the termination of his parental rights.[2] See OCGA § 15-11-96(i).
The trial court also found that such legitimation was necessary because the father failed to prove that he was married to the mother by common law. In making this finding, the trial court relied upon the mother's testimony that they never held themselves out as husband and wife, that the father claimed she was not worth marrying, that she did not consider herself to be his wife, that she never wore a wedding ring, that she never used his last name, and that the father promised to marry her but never did. The trial court also noted that the father never claimed he was married by common law to the mother in his petitions to legitimate. In fact, he alleged the children were born out of wedlock.
1. The father asserts the trial court erred by finding no common-law marriage existed based on the testimony of numerous other witnesses that conflicted with the mother's testimony. We find no merit in this assertion. "The existence of a common-law marriage is a question for the trier of fact. The trier weighs the credibility of witnesses and the weight of the evidence. If there is any evidence to support the finding of no marriage, the decision must be upheld." (Citations and footnotes omitted.) In re Estate of Wilson, 236 Ga.App. 496, 498(1)(j), 512 S.E.2d 383 (1999). Because the mother's testimony, as well as the father's judicial admission, supported the trial court's conclusion that no common-law marriage existed, we must uphold the trial court's finding. Id. at 499(1), 512 S.E.2d 383; see also R.D. Stallion Carpets v. Dorsett Indus., L.P., 244 Ga.App. 719, 724, 536 S.E.2d 523 (2000) (admissions of fact in pleading are admissions against interest).
2. The father asserts that the trial court should have granted his motion for a continuance to obtain income tax returns that would show that he filed joint tax returns with the children's mother. "A trial court's decision to grant or to deny a continuance will not be disturbed absent abuse of discretion," and, "the party seeking a continuance must show due diligence." (Citations and footnote omitted.) In the Interest of T.R., 270 Ga.App. 401, 401-402(1), 606 S.E.2d 630 (2004). The trial court denied the motion because the father had adequate time to obtain any available records before the scheduled hearing, and because correspondence from the Internal Revenue Service (IRS) noted that records before January 1, 1997 were "likely destroyed pursuant to routine *747 record control schedules." The trial court also reasoned that a delay was unnecessary because tax records dated after January 1, 1997 would not be probative of a common-law marriage, as common-law marriages could no longer be created after this date. See OCGA § 19-3-1.1.
The record shows that on July 26, 2005, a hearing was scheduled for October 19, 2005 on DFACS's petition to terminate the father's parental rights. The father's counsel represented in the hearing that he was informed by the IRS that it takes approximately 30-45 days to produce the records and counsel did not request this information until September 26, 2005. Given the father's delay in requesting the records and lack of due diligence, we cannot find the juvenile court abused its discretion by denying the motion for a continuance. See In the Interest of T.R., supra.
Judgment affirmed.
RUFFIN, C.J., and PHIPPS, J., concur.
NOTES
[1] OCGA § 15-11-2 (10.1) (B) defines a legal father to include a man who was married to the mother at the time the child was conceived or born.
[2] The father does not contest this portion of the trial court's order on appeal.