705 S.E.2d 885 (2011)
In the Interest of C.A.L., a child.
No. A10A2257.
Court of Appeals of Georgia.
January 27, 2011.
Joseph W. Jones Jr., for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Penny Hannah, Assistant Attorney General, Hunnicutt & Taylor, Linda B. Taylor, Newnan, for appellee.
MIKELL, Judge.
The legal father of C.A.L., a minor child, appeals from the juvenile court's finding that the child was deprived and also awarding custody of the child to her mother. We affirm.
In determining whether a child is deprived, a juvenile court is governed by OCGA § 15-11-2(8), which provides as follows:
"Deprived child" means a child who: (A) Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals; (B) Has been placed for care or adoption in violation of law; (C) Has been abandoned by his or her parents or other legal custodian; or (D) Is without a parent, guardian, or custodian.
Upon appellate review of an order finding deprivation, "we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived. We neither weigh evidence nor determine the credibility of witnesses."[1]
*886 The record reflects that the Lamar County Department of Family and Children Services ("DFACS") had previously investigated incidents involving C.A.L. prior to the allegations involved in this case. Investigator Allison Nash testified that in July 2009, nine-year-old C.A.L. alleged that when she visited her father and stepmother, they harassed her about her private parts; that they continually asked her to show them her private parts to make sure she was clean; that her father was bathing her, which made her uncomfortable; and that her stepmother would demonstrate how to clean her vagina by showing her own to C.A.L. C.A.L. also disclosed to Nash that she had been forced to perform oral sex with two of her paternal cousins two years earlier. According to Nash, C.A.L.'s mother stopped C.A.L. from visiting her father for a couple of months. In September, however, when C.A.L. returned from a visit to her father's house, she had blood in her underwear. C.A.L.'s mother called Nash, and she advised them to go the emergency room. When Nash interviewed C.A.L., she reported that her father had used two fingers to spread open her vagina. Appellant denied all of the allegations that C.A.L. made against him.
Dr. Linda Bolton, a psychologist who began treating C.A.L. when she was three years old, testified that on August 7, 2009, C.A.L. told her that two of her cousins, a male and a female, forced her to lick their private parts and licked hers. At the next visit on August 19, C.A.L. told Dr. Bolton that her father asked her to spread her legs and took a picture of her private parts when she was in the bathtub. During C.A.L.'s visit with Dr. Bolton on September 29, C.A.L. reported that her dad opened her vagina with his thumb and forefingers; that her stepmother did the same with her thumbs and index fingers on both hands; that her dad bathed her and applied lotion to her body; and that she again saw the two cousins who had forced her to lick their private parts. Dr. Bolton testified that C.A.L. then began to show signs of post-traumatic stress disorder, which Dr. Bolton suspected occurred because C.A.L. had begun to discuss these occurrences. Dr. Bolton also treated C.A.L.'s older sister, L., and testified that L. had told her that before C.A.L. was born, C.A.L.'s father wanted to shower with her and that L. told her mom after one of the showers that he had a monkey's tail.
Dr. Asia Gifford, a clinical psychologist employed at the Medland Treatment Center, testified that she performed a psycho-sexual evaluation on C.A.L. at the request of the Lamar County DFACS. C.A.L. reported the same information about her father and stepmother as well as her cousins to Dr. Gifford. In addition, C.A.L. told Dr. Gifford that the bleeding in her underwear had come from cuts in her vagina, but she did not know what caused the cuts; that her father inspected her vagina each time he picked her up from her mother's house to see if it was clean; that her older sister had touched her twice; and that she had heard her mother and stepfather as well as her father and stepmother having sex several times. Dr. Gifford also testified that C.A.L. told her that she sometimes thinks of suicide but that she would never really do it and that she had engaged in risky behavior, such as jumping off a ledge and slicing her finger with a knife to see what it felt like.
After conducting several tests on C.A.L., Dr. Gifford concluded that the child had post-traumatic stress disorder, attention deficit hyperactivity disorder, and that she had been sexually abused. Dr. Gifford recommended that C.A.L. undergo counseling with a therapist experienced in treating sexually abused children who could also treat C.A.L.'s other disorders; that C.A.L. have no unsupervised contact with her father and stepmother; that C.A.L. be supervised around other children due to the risk for acting out sexually; that C.A.L. and her older sister have separate rooms; that C.A.L. not be exposed to any pornography or sexually explicit materials or activity; and that C.A.L. see a psychiatrist to manage her medications.
The juvenile court concluded that C.A.L. was deprived in that she was without the proper parental care or control necessary to care for her physical, mental or emotional health or morals. The court listed the causes of deprivation as to the legal father as emotional abuse, sexual abuse, and neglect/lack of supervision. The court placed custody of *887 C.A.L. with the mother and ordered, among other things, that the mother follow all of Dr. Gifford's recommendations, instructed DFACS to keep the case open for six months for monitoring, and denied the father and stepmother access to C.A.L. until authorized by the therapist. The court's order is set to expire on March 9, 2011, unless terminated sooner by the court.
In his sole enumeration of error on appeal, the father maintains that the deprivation finding must be reversed because there was no clear and convincing evidence of who was responsible for C.A.L.'s abuse. We note that he cites no authority in support of the proposition that this reason, alone, warrants the reversal of the trial court's finding, and we have found none.
The definition of a deprived child "focuses upon the needs of the child regardless of parental fault. The deprivation petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue."[2] The evidence shows that C.A.L. was inappropriately touched and suffered from sexual abuse, which contributed to her developing post-traumatic stress disorder. Accordingly, the trial court's finding that there was clear and convincing evidence of deprivation is supported by the record.[3] Additionally, "[i]t is well established that a juvenile court is authorized to find a lack of proper parental care or control based on a parent's failure to protect his or her child from injury."[4] In the instant case, in addition to the evidence that the father and stepmother were touching C.A.L. inappropriately, there was evidence that C.A.L. was sexually abused by the father's cousins and based on the father's testimony, it does not appear that he believed C.A.L. or would protect her from these cousins in the future. Therefore, viewing the evidence in favor of the judgment, we affirm the finding of deprivation.
Judgment affirmed.
SMITH, P.J., and ADAMS, J., concur.
NOTES
[1] (Citation and punctuation omitted.) In the Interest of A.B., 285 Ga.App. 288, 645 S.E.2d 716 (2007).
[2] (Citation and punctuation omitted.) In the Interest of V.A.D., 305 Ga.App. 23, 26, 699 S.E.2d 346 (2010).
[3] See In the Interest of A.P., 299 Ga.App. 886, 889, 684 S.E.2d 22 (2009) (deprivation finding affirmed where mother did not appreciate danger of stepfather acknowledging that his erect penis may have touched daughter's vaginal area); In the Interest of N.D., 286 Ga.App. 236, 648 S.E.2d 771 (2007) (finding of deprivation based on allegations of sexual abuse).
[4] (Citation and punctuation omitted.) In the Interest of K.L., 300 Ga.App. 557, 559, 685 S.E.2d 464 (2009).