718 S.E.2d 49 (2011)
312 Ga. App. 180
In the Interest of S.B. et al., children.
No. A11A1224.
Court of Appeals of Georgia.
October 20, 2011.
Phyllis Renee Williams, Decatur, for appellant.
Samuel S. Olens, Atty. General, Shalen S. Nelson, Senior Atty. General, Rosalind Michelle Zollicoffer, Yolanda M. Smith-Williams, for appellee.
DILLARD, Judge.
The father of S.B., Ka. B., Ke. B., and T.B. appeals from an order of the Juvenile Court of DeKalb County, arguing that the court erred in finding that the children were deprived and that the court's deprivation order was deficient. For the reasons set forth infra, we affirm.
In an appeal from a deprivation order, we review the evidence from a juvenile court hearing "in the light most favorable to the court's judgment and determine whether any rational trier of fact could have found by clear and convincing evidence that the children were deprived."[1] So viewed, the evidence shows that in early February 2009, S.B., who was thirteen years old at the time, confided to a friend at school that her father had forced her to have sexual intercourse with him on several occasions. S.B.'s friend told the school's counselor about this revelation, and the counselor, in turn, informed the *50 school's resource officer and DeKalb County DFCS. The resource officer then spoke with S.B., at which time she repeated that her father had been forcing her to have sexual intercourse with him over the course of the last year. S.B. also informed the resource officer that her mother had caught her father having sexual intercourse with her on two separate occasions but did nothing to stop this abuse. Later, when the resource officer questioned S.B.'s mother about these allegations, the mother admitted that she had twice caught her husband having sexual intercourse with S.B. Both S.B. and her mother repeated these same allegations to the DFCS investigator initially assigned to the case.
Based on S.B.'s outcry, a police officer interviewed S.B.'s sister T.B., who was fourteen years old at the time. Although T.B. did not allege that her father had ever forced her to have sex with him, she did reveal that her father had recently punished her by making her fully undress and then touching her breasts and buttocks. The same police officer also interviewed S.B. and T.B.'s father after informing him of his Miranda rights. During that interview, the father initially denied any wrongdoing, but he eventually admitted that he had engaged in sexual intercourse with S.B. on several occasions and that he had made T.B. remove all her clothes on one occasion to punish her. The father also acknowledged that his wife (the children's mother) had twice caught him having sexual intercourse with S.B. As a result of this interview, the police officer arrested the father. In addition, DFCS removed S.B., T.B. and their two younger siblings, Ke. B. and Ka. B., from the home.
On March 5, 2009, DFCS filed petitions alleging that all four children were deprived based on the father's sexual abuse of S.B. and T.B. and the mother's failure to protect them from such abuse despite being aware of it. A few months later, the juvenile court held a hearing on the matter. During that hearing, S.B. testified about the sexual abuse inflicted upon her by her father and further testified that her mother had witnessed her father engaging in sexual intercourse with her on two occasions but had done nothing to stop it.
The DFCS investigator and the school-resource officer also testified regarding S.B.'s outcry and the mother's admission that she was aware that the father was having sexual intercourse with S.B., and the investigating police officer recounted the details of his interview of the father. Additionally, DFCS proffered the testimony of two psychologists from the Georgia Center for Child Advocacy, who conducted forensic interviews of S.B. and T.B., respectively, and claimed that the girls repeated the disclosures regarding their father's sexual abuse of them that they had made to others.
In contesting DFCS's evidence, the father proffered the testimony of a pediatrician, who did not examine S.B. but, rather, reviewed a medical report completed by physicians who did examine her several days after her outcry. The pediatrician testified that the medical report indicated that S.B. exhibited no physical symptoms of recent sexual abuse. However, on cross-examination, the pediatrician acknowledged that the findings in the medical report did not conclusively preclude the possibility that S.B. had ever suffered such abuse. Finally, both the father and the mother testified during the hearing, and although the father denied S.B.'s allegations, both he and the mother refused to answer the majority of questions posed to them, asserting, instead, their Fifth Amendment right against self-incrimination.
At the conclusion of the hearing, the juvenile court found that all four children were deprived based on the conduct of both parents, and on November 18, 2009, the court issued an order to that effect. This appeal by the father follows.
1. The father contends that the juvenile court erred in finding clear and convincing evidence that the children were deprived. We disagree.
A deprived child is one who is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals."[2] *51 In determining whether a child is without proper parental care or control, the court shall consider, among other things, "evidence of past egregious conduct of the parent toward the child or toward another child of a physically, emotionally, or sexually cruel or abusive nature."[3] Additionally, "[i]n determining whether a child is deprived, the court focuses on the needs of the child rather than parental fault."[4]
Here, the evidence shows that the father abused S.B. by forcing her to have sexual intercourse with him and that he also abused T.B. by forcing her to fully undress and touching her breasts and buttocks in an inappropriate manner. In fact, the father admitted to these actions before later recanting. Furthermore, when questioned about his police interview during the deprivation hearing, the father refused to provide answers and, instead, asserted his Fifth Amendment right against self-incrimination, which led to the juvenile court appropriately inferring that a truthful answer would have been harmful.[5] Moreover, several witnesses testified that the mother admitted to catching the father having sexual intercourse with S.B. and doing nothing to stop it. And when questioned about these admissions during the hearing, the mother similarly asserted her Fifth Amendment right against self-incrimination.
Nevertheless, the father argues that the evidence was not clear and convincing in support of the juvenile court's deprivation finding because the results of S.B.'s medical examination did not indicate that she had been sexually abused and, therefore, called S.B.'s credibility into question. We are unpersuaded. Indeed, as previously noted, while the pediatrician testified that the medical report did not indicate that S.B. had recently been subjected to sexual abuse, she also conceded that the report did not preclude the possibility that S.B. had ever suffered such abuse. Furthermore, "it is the role of the factfinder, not the appellate courts, to judge the credibility of a witness or the lack thereof."[6] Thus, there was sufficient evidence to support the juvenile court's finding that S.B. and T.B. were deprived.[7]
Within his sufficiency-of-the-evidence challenge, the father also contends that there was no evidence presented to show that S.B. and T.B.'s two younger siblings, Ke. B. and Ka. B., were deprived. Again, we disagree. The father's sexual molestation of S.B. and T.B., as well as the mother's failure to stop such abuse despite being aware of it, authorized the juvenile court to find that Ke. B. and Ka. B. were also deprived.[8] In fact, even without direct testimony as to the effect on Ke. B. and Ka. B., the juvenile court was authorized to infer from the evidence that the sexual abuse of S.B. and T.B. in the home had an adverse effect on the two younger siblings.[9] Accordingly, the trial court did not err in finding that all four children were deprived.
2. The father also contends that the juvenile court erred in denying his motion to *52 dismiss based on insufficient evidence, which he submitted during the hearing after the close of DFCS's case. Given our holding in Division 1 that clear and convincing evidence supported the juvenile court's deprivation finding, the court clearly did not err in denying the father's motion to dismiss.
3. The father further contends that the juvenile court's deprivation order was deficient in that it lacked findings of fact as required by OCGA § 15-11-54(a). We disagree.
OCGA § 15-11-54(a) provides, in pertinent part, that "[a]fter hearing the evidence on any petition alleging deprivation, the court shall make and file its findings as to whether the child is a deprived child." And "[f]indings of fact and conclusions of law are mandatory under OCGA § 9-11-52(a)."[10] However, contrary to the father's contention, here, the juvenile court's order clearly stated that its finding of deprivation was based on the father's sexual abuse of S.B. and T.B. and the mother's failure to stop such abuse as alleged. Accordingly, the father's contention that the juvenile court's order was deficient is without merit.[11]
Judgment affirmed.
SMITH, P.J., and MIKELL, J., concur.
NOTES
[1] In the Interest of T.W., 297 Ga.App. 886, 886, 678 S.E.2d 546 (2009) (punctuation and footnote omitted).
[2] OCGA § 15-11-2(8)(A).
[3] OCGA § 15-11-94(b)(4)(B)(iv).
[4] In the Interest of M.K., 288 Ga.App. 71, 71(1), 653 S.E.2d 354 (2007) (citation omitted).
[5] See In the Interest of A.A., 293 Ga.App. 471, 474(1), 667 S.E.2d 641 (2008) (holding that a parent may plead the Fifth Amendment in juvenile proceedings, but if a parent does so, the trial court may infer that a truthful answer would be harmful); In the Interest of M.V., 253 Ga.App. 669, 672, 560 S.E.2d 125 (2002) (same).
[6] In the Interest of B.H., 295 Ga.App. 297, 298(1), 671 S.E.2d 303 (2008) (citation and punctuation omitted).
[7] See, e.g., In the Interest of C.A.L., 307 Ga.App. 658, 660-61, 705 S.E.2d 885 (2011) (holding that child's testimony that she was inappropriately touched in a sexual manner provided clear and convincing evidence of deprivation); In the Interest of B.H., 295 Ga.App. at 297-98(1), 671 S.E.2d 303 (holding that child's testimony regarding sexual abuse to which she was subjected provided clear and convincing evidence of deprivation).
[8] See In the Interest of E.S.K., 299 Ga.App. 35, 38, 681 S.E.2d 705 (2009) (holding in termination of parental rights case that past molestation of one child was properly considered in deciding whether another daughter's deprivation would continue); In the Interest of A.C., 234 Ga.App. 717, 719, 507 S.E.2d 549 (1998) (same).
[9] Cf. In the Interest of E.D., 287 Ga.App. 152, 157-58, 650 S.E.2d 800 (2007) (holding that trial court was authorized to infer from the evidence that the alcohol abuse and domestic violence in the home, which was the cause of older child's deprivation, also had an adverse effect on the minor children).
[10] In the Interest of J.V., 241 Ga.App. 621, 627, 526 S.E.2d 386 (1999) (citation and punctuation omitted).
[11] See id.